Good morning, Jim Nicholas for the Appellant, SPAR Group, Inc. Judge Torello, may I reserve two minutes? Yes, you may. I'd like to dive in right to the equitable estoppel argument here. If we're operating under the Sourcing Unlimited Standard, that the non-signatory here, SPAR Group, is seeking to resolve an arbitration, are intertwined with the agreement that the Estoppel Party has signed, I think we're there. And it's important to understand, first, we have a limited record, and that the two places we need to look to determine whether or not the issues that we're seeking to resolve an arbitration are intertwined with the agreement are the The only thing to me is that the agreement is a contract. Arbitration is contractual. If you don't have it under the contract, I have difficulty finding that you have a right to arbitration. I understand that, Your Honor, but the important understanding here stems from the contract and the nature of the claims that have been raised against both SPAR entities. Here you have a wage act claim, a claim under the Massachusetts Wage Act, and it's a unique claim. It's not a standard, I did not receive the wages from my employers. The claim is effectively this. I was to receive certain compensation from, in this instance, two entities. As the result of a decision by these entities, spoken about jointly, to reduce my compensation by foisting on me certain costs and expenses, my wages under the wage act have now been reduced such that I have lost and forfeited wages. Well, if we assume the complaint is accurate, as we do for this, your client broke the wage law of Massachusetts. Say again, Your Honor? If we assume the allegations are correct, your client violated the wage and hour laws of Massachusetts. That's correct, Your Honor. So now you want us to say that your clients, having gone to great trouble to set up separate entities, we should deem them both get the benefit that they decided to have the plaintiff sign with only one of them. And I think principles of equitable That doesn't sound particularly equitable. You were running the whole show here. You decided how many corporations to set up, who to do what, and then you guys draft the contract and you have him sign the contract, and now you want us to read into the contract something that isn't there. I'm not asking that anything be read into the contract that's not there. I'm simply saying that based on how this case has been framed, it is inequitable to send one SPAR entity to arbitration on an individual basis and force the other SPAR entity to litigate the exact same claims in civil litigation on a class-wide basis. Why? Say again? Why? Because the nature of the claims, again, as has been set up here, is as follows. The How? He claims, again, and it's a unique wage claim, that he was to receive wages from the SPAR entities, and he did not. Because he was forced to incur costs and expenses that were foisted on him. The costs and expenses that he's referring to are in the contract. But it doesn't make any difference if they're in the contract. The fact, he just gets up and says, here are the hours I worked, and here are the expenses that I paid. Then he's going to claim under the law, doesn't he? He may have a claim under the law. He's an employee. And no one's trying to deprive him of the claim under the law. In his action against SPAR, what aspect of the master agreement will the court need to interpret? The court needs to interpret the arbitration provision, and the court needs to interpret It says, any dispute between the parties relating to this master agreement or otherwise arising Now, the relationship in the parties that I read is Holden Paradise and SPAR Business Services. That's correct, John. SPF. SPF. That's correct, John. So is there any, you say that in an action between the plaintiff and your client under the Massachusetts wage and hour laws, my question was, what provision of the master agreement would the court in that action need to interpret? And you said the arbitration clause. Is there anything else that you claim that the court would need to interpret in the master agreement? Yes, Your Honor. What is that? Section 7, 10, and 14 of the master agreement, which speak to the expenses that were diverted towards plaintiff by SBS. And now he's seeking recompense from SPAR Group for those actions. But what interpretive question is being disputed here in paragraphs 7, 10, and 14? Well, let me back up, Your Honor. I don't think it's a question of interpretation. I think it's a question of whether or not his claims against SPAR Group are intertwined with the master agreement. If you look at Massachusetts law, I can assure you there's nothing in it that talks about having to decide under the wage and hour laws whether there's this intertwining with an arbitration agreement. Let's just take the case, him against your client. You go to trial. Does he ever need to even mention the master agreement? If so, what provisions would he need to enter? And is there some dispute that the court in that action would need to resolve concerning the master agreement? I think he would need to reference section 7 and 14. What dispute is there between the parties regarding section 7, 10, or 14? The reductions in his pay that he is claiming as the offset for his wages under the Wage Act come from the contract. They were not born of his relationship with SPAR Group. We know how it works. And historically, he may need to say, I paid this, I paid that. He may even say, here it's spelled out right in the contract. But is there any dispute between the parties concerning the meaning of 7, 10, or 14? No. But is your idea that if there was no contract, but there was just the relationship, the payment, just over time, they never formalized it in a written contract, but Hogan did the work, had the expenses, received the amount of compensation for that work that he received, and all of it was done without a contract, would he still have a wage and hour claim? If it was done in the absence of a contract? Yeah. Yes, he would. I don't dispute that. My point is... So then, what is the significance of the fact that there is a contract? How does he worse off for having had the contract with respect to his wage and hour claim? He doesn't need to rely on it. He's just relying on the fact of the relationship. Now, it might be that one fact that he can point to to prove the relationship, other than his friend saying he seemed to go to that office every day, would be, and I have a contract with them, look at it. But why does that suddenly now disable him from being able to proceed under the wage and hour claim without an arbitration, given that he never signed any agreement to arbitrate? Because of the unique nature of the claim. This isn't simply a matter of, I provided services and didn't get paid. That is not what he's claiming. He's saying, I provided services, received a certain amount, and because of the offsets that I was forced to incur, I am now getting paid less than I should have under the wage act. But that doesn't... Again, that could be... He could make that exact same argument if he had no contract, right? If that actually occurred, yes. So, he's going to contend it actually occurred. Then we're going to say, how do we know it actually occurred? And he'll say, look at the contract. That supports my view that it actually occurred. Is that pointing to the contract alone? The basis for your saying that Equinoble Staple attaches? Yes. Okay, what's the authority that suggests that even though the claim can succeed independent of the contract, the fact that he might use the contract as evidence to support his claim, just for the fact of the relationship, is enough to say that Equinoble Staple attaches such that he's subject to the arbitration clause? And that's because, if you read the allegations in the complaint, particularly the allegations about taxation, which are directed at SBS by and large, he is now seeking, and those issues are covered by Section 714 of the Master Services Agreement, he's now seeking to use those taxation issues, which he raised exclusively against SBS, in the complaint, to support his wage act claim for an offset against Spar Group. Is there any dispute about payments he received, expenses he bore, and the job that he did? In usually these cases, there's no dispute about any of that stuff. Is there here? Is there a dispute? Sure. There will be a dispute. We haven't reached that point of the case. There will be a dispute on all those issues. Yes, Your Honor. So you challenge his claim as to what he was paid? I don't challenge the claim as to what he was paid. I challenge the claim as to what costs and expenses he alleges he actually incurred. And, in fact, I don't believe the complaint says that he actually incurred a number of the expenses that are outlined here. That allegation is not present. And is the idea that at trial, one fact that might be a problem for you in making that argument, is the contract? Yes. And that's why you say, therefore, he necessarily is invoking the contract against you? He would have to be invoking the contract. I get the argument. If all that's right, what do you make of the fact that the contract that's at issue says disputes between the parties? Because what just seems strange to me is if I should be able to enter into a contract with X person saying, I'm going to arbitrate these types of claims only. And this contract seems to say that it's just me and you, when we have a dispute, we agree to arbitrate. And now you're saying that that transfers over, that if I ever reference that contract at all, I have agreed to arbitrate with this other person. That just seems surprising to me, just if we think text is worth very much. Well, you know, Your Honor, as I read this, it is any dispute between the parties related to this master agreement or otherwise arising out of the relationship. So it has to be a dispute between the parties. Otherwise relating to the relationship under its terms. And that only with respect to the or otherwise is an alternative to the first part, all of which is modified by disputes between the parties. But the relationship broadens that initial term. With respect to any claim that is a dispute between the parties, there's no indication of an agreement to arbitrate things that are not between the parties. And that's why we're arguing equitable stock, Your Honor. I understand that that SPAR group is not a partner to this contract. So you're saying even if the contract specifically says this is an arbitration at prison, to apply only between the two of us in all circumstances, we still could apply equitable stock? If that was the specific language used? Yeah. No, I don't think that's true, but that's not the language that was used. The language that was used is between the parties, and again, related to this master agreement or otherwise arising out of the relationship. The relationship, again, is alleged by the plaintiff in the complaint. The feedback is only with respect to disputes between the parties. This is not a dispute between the parties. Understood, Your Honor. Well, is there any case law that suggests that when the contract is written that way, we still would apply equitable stock? No, I'm not aware of any case law that does, Your Honor. Thank you. Thank you. Good morning. May it please the Court, my name is Brooke Lane. I represent Paradise Hogan, the Plaintiff Appellee. Just to start with the sort of last issue that was before the Court, the SGC has actually discussed the precise scenario in which you have sort of a but-for contractual relationship. And they've actually spoken extensively about that. They cited two different Federal Circuit cases, one from the 10th Circuit, one from the 11th Circuit. They basically said that when a contract is simply factually significant to a claim and the claim itself does not rely on it, that is not the type of a situation which gives rise to equitable stoppel. It is simply factually significant to the claim, may be relevant at some point at trial, but, again, if the claim is not based on it. The SGC case that I'm citing is Machado v. System IV. Was it in your brief? I believe we did mention it in our briefing. Okay. Cenk, if it isn't, send us that 2880 letter. I will. And the cases that the SGC actually cited to were Lennox v. McLaren Surgical Court. But the point here, again, if the issue that we're going to discuss is equitable stoppel, is fairness. And on the one hand, you have this mega corporation that engages an army of individuals across this country to engage in merchandising services for its benefit. It has specifically structured itself to be completely separate from SBS, both in terms of their corporate status, in terms of the relationship that they have with each other. They're physically located at different locations and they engage in different usual courses of business. SBS and SPAR also are clearly aware of each other because they have a prior course of dealing. And that's significant because with this particular agreement, as the district court found, SPAR easily could have been a party to it and decided that they wanted to have nothing to do with it. And so when you get to the point now where their practices of treating these individuals as independent contractors are being challenged, they suddenly claim that it would be inequitable for them to sort of deal with the consequences that may come from the very strategic and calculated decisions that they've come up with over the years for how to structure themselves and engage with these individuals. And it should be noted that SPAR has been afforded significant financial benefits from these arrangements. They've avoided paying significant overhead in the form of workers' comp, unemployment, payroll taxes, etc., by engaging in this sort of contractual relationship with these individuals. And again, as we state in our papers, courts have consistently been unwilling to sort of relieve them of the consequences of that structuring when they seek to invoke a contract that they intentionally avoid as it suits them. And so on a macro level and then also micro level, the fact that Mr. Hogan does not rely on this contract in any way to make out his claims against SPAR, there is no basis under InterGen or under more, I guess, broader principles of fairness and equity to find that Mr. Hogan is stopped from avoiding arbitration with an entity that he had no reason to exist or had no reason to know exists at the time he entered that agreement or that he would be working with them at the time that he entered that agreement. For that reason, there is no basis for equity here. Can you just tell me how our decision in Sourcing Unlimited can be reconciled with your position? In what regard, Your Honor? Well, there we seem to apply equitable estoppel to a circumstance. And I can't tell from our decision, and I'm curious how you read it, whether we were saying there that the claim against the non-party to the agreement containing the arbitration clause has to depend on the contract that contains the arbitration clause. Right. Or whether we're simply saying there that it's enough to trigger equitable estoppel if the claim derives from, and I don't quite know exactly what that means. So I'm just trying to think of the... Because if I understand the argument of your opponent, it's true that in a different world, you might have the same claim even if you had no contract with SBS. But in fact, you did have the contract with SBS, and that's going to be helpful to you in making out your argument that you were treated unfairly under the Mass Wage Law, because it's going to support the idea you were an employee. It's going to support the idea that you did, in fact, incur these expenses. So in that sense, you are relying on the contract. You don't have to, but it's certainly what your case derives from, is the fact that you had that employment relation with them as manifest in the contract. You say that's not enough to trigger equitable estoppel, and you cite the Machado case saying under Mass Law, the mere fact that you point to the contract for factual support isn't enough to trigger it. So I'm asking, how does Sourcing Unlimited, which is the president of our court, match up with your argument? In that case, this court basically set out two different alternative standards that could give rise to equitable estoppel. The first is where a claim depends on an agreement or derives from benefits that are due under it. There are no allegations that Mr. Hogan was due any benefits under this agreement, or that he was seeking to enforce any terms that he was entitled to have received the benefit of and was deprived. The second form of equitable estoppel outlined in that case comes in the form of claims that are intertwined with obligations and duties that the non-signatory had with the plaintiff for the signatory. And again, there are no allegations here that Sparr had any duties or obligations under the agreement itself that it failed to fulfill, which then caused Mr. Hogan harm. As the court has pointed out, it's not mentioned anywhere in that agreement, so it follows logically that it can't have any responsibilities under it. And so under Sourcing Unlimited, you don't have the type of scenario under that standard where equity would require stopping Mr. Hogan from avoiding arbitration with a non-signatory. I am happy to address third-party beneficiary, the plain language of the contract, and also the waiver issue. But again, our principal argument here against equity is that his claims don't depend on the agreement in any way, and therefore there is no reason to stop him from avoiding arbitration with Sparr itself. Thank you. Thank you. I'll leave you with two minutes. I know you want to make your own points, but in the course of it or at the end of it, could you just address the Sourcing Unlimited case and how that matches up to that? Yes, and I'm happy to. The Sourcing Unlimited case is fundamentally different from this case. In that instance, you had, I believe it was, two non-signatories to the agreement that were. Give me a second. I'll pull it up. The case in and of itself is fundamentally different. You were dealing with a plaintiff that had brought a lawsuit. You did. But it's different than your case. It is different in our case. But the standard is the standard in the First Circuit, that the issues that the non-signatory seeks to enforce in arbitration are intertwined with the agreement. And that is the standard that we're left with here. I don't think the case is, it's certainly not on all fours of us factually. This case is much more, and it's out of the circuit. It's a state court decision from California, although I would note that in the Garcia case, the standard of intertwinedness is very similar to the First Circuit standard. And there you had a situation that was much more similar to what we're dealing with here, where you had a third party temp agency that had a contract with a worker who supplied that worker to a third party. And in the course of the relationship with the third party, certain claims, including claims under the California Labor Code, arose. And despite the fact that he only signed an arbitration agreement with the temp staffing agency, the ultimate customer of the temp staffing agency was permitted to invoke equitable estoppel and force the case into arbitration. Here you have what is, according to the complaint, a temp staffing agency in the form of SBS. That's how it's identified in the complaint, who supplied workers to a customer. They say there are multiple customers, but the only one that I can find is Spar Group. And as a result of supplying those, in this instance, Mr. Hogan, certain allegations and certain claims under the Massachusetts Wage Act came to fruition that we now seek to force into arbitration as he's arbitrating his claims against SBS.  Thank you, Your Honor.